**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

FILED
2024 OCT 18  PM 3: 41

*CL*

RENEE MONTALBANO, Individually and as
Personal Representative of the Estate of
ROBERT MONTALBANO, NICHOLAS
MONTALBANO and NINA MONTALBANO,

PLAINTIFFS,

v.

SARAH HAWKEN, JOSEPH RYAN,
TSJC CORP. d/b/a LAKEWAY MARINA,
RM REALTY ASSOCIATES OF DE, LLC,
d/b/a KELLER WILLIAMS REALTY
MOORESTOWN, RM REALTY ASSOCIATES
OF MOORESTOWN, GEORGE DENNEY,
MICHAEL L. McGAVISK and
KELLER WILLIAMS REALTY, INC.
jointly, severally and/or in the alternative,

DEFENDANTS.

Case No. **1:24 CV 01255**

## COMPLAINT

COMES NOW, Plaintiffs Renee Montalbano, individually and as personal representative

of the Estate of Robert Montalbano, Nicholas Montalbano and Nina Montalbano (collectively,

"Plaintiffs") by and through the undersigned attorneys, and file this Complaint against Sarah

Hawken (hereinafter "Defendant Hawken"), Joseph Ryan (hereinafter "Defendant Ryan"), TSJC

Corp. d/b/a Lakeway Marina (hereinafter "Defendant Lakeway Marina"), RM Realty Associates

of DE, LLC d/b/a Keller Williams Realty Moorestown (hereinafter "Defendant KW

Moorestown"), RM Realty Associates of Moorestown, LLC (hereinafter "Defendant RM

Realty"), George Denney (hereinafter "Defendant Denney"), Michael L. McGavisk (hereinafter

1

"Defendant McGavisk") and Keller Williams Realty, Inc. (hereinafter "Defendant Keller Williams") jointly, severally and/or in the alternative (hereinafter, collectively, "Defendants") and would respectfully show the Court as follows:

## A.    PARTIES

1.      Plaintiff Renee Montalbano is an individual, a citizen of the State of New Jersey, Burlington County, and is the widow of the Decedent Robert Montalbano.

2.      Plaintiff Nicholas Montalbano is an individual, a citizen of the State of New Jersey, Burlington County, and the son of the Decedent Robert Montalbano

3.      Plaintiff Nina Montalbano is an individual, a citizen of the State of New Jersey, Burlington County, and is the daughter of Decedent Robert Montalbano.

4.      Defendant Hawken is an individual and resident of the State of New Jersey, Burlington County.  In accordance with Tex. Civ. Prac. & Rem. Code §17.044, service may be effectuated by substituted service on the Texas Secretary of State, Statutory Documents Section – Citations Unit located at P. O. Box 12079, Austin, TX  78711-2079.  Defendant Hawken may be served at her place of residence, 2 Golf Club Way, Marlton, NJ  08053.

5.      Defendant Ryan is an individual and resident of the State of New Jersey, Burlington County.  In accordance with Tex. Civ. Prac. & Rem. Code §17.044, service may be effectuated by substituted service on the Texas Secretary of State, Statutory Documents Section – Citations Unit located at P. O. Box 12079, Austin, TX  78711-2079.  Defendant Ryan may be served at his place of residence, 512 Cornell Rd, Burlington, New Jersey  08016. Currently, no action to effectuate service is necessary as counsel for Defendant Ryan has agreed to accept service on his behalf.

2

6.      At all relevant times herein, Plaintiffs are informed and believe and thereon allege Defendant Ryan was an employee, agent and/or servant of Defendants KW Moorestown, RM Realty, Denney, McGavisk and/or Keller Williams acting within the scope of his employment, agency and/or service.

7.      Defendant Lakeway Marina is domestic for-profit corporation formed and operated under the laws of the State of Texas. Defendant Lakeway Marina may be served with process by serving its registered agent, Steven M. Allen at 103A Lakeway Dr., Austin, TX 78734.

8.      Defendant KW Moorestown is a Foreign Limited Liability Company operating under the laws of the State of New Jersey not in good standing, whose charter was revoked for not filing an annual report for two (2) consecutive years and which does not maintain a registered agent for service of process in the State of Texas.  In accordance with Tex. Civ. Prac. & Rem. Code §17.044, service may be effectuated by substituted service on the Texas Secretary of State, Statutory Documents Section – Citations Unit located at P. O. Box 12079, Austin, TX  78711-2079.  Defendant KW Moorestown may be served by serving its registered agent Defendant Denney at its main business address of 1814 Marlton Pike East, Cherry Hill, NJ  08003.

9.      Defendant RM Realty is a Foreign Limited Liability Company operating under the laws of the State of New Jersey not in good standing, whose charter was revoked for not filing an annual report for two (2) consecutive years and which does not maintain a registered agent for service of process in the State of Texas.  In accordance with Tex. Civ. Prac. & Rem. Code §17.044, service may be effectuated by substituted service on the Texas Secretary of State, Statutory Documents Section – Citations Unit located at P. O. Box 12079, Austin, TX  78711-

2079.  Defendant KW may be served by serving its registered agent Michael McGavisk at its main business address of 123 E. Main St., Moorestown, NJ 08057.

10.     At all relevant times herein, Plaintiffs are informed and believe and thereon allege Defendant Denney is an individual, resident of the State of New Jersey, Camden County.  In accordance with Tex. Civ. Prac. & Rem. Code §17.044, service may be effectuated by substituted service on the Texas Secretary of State, Statutory Documents Section – Citations Unit located at P. O. Box 12079, Austin, TX 78711-2079.  Defendant Denney may be served at his place of residence, 6 Charles Lane, Cherry Hill, NJ 08003.

11.     At all times relevant herein, Plaintiffs are informed and believe and thereon allege Defendant Denney maintained an ownership interest in KW Moorestown and/or RM Realty and was responsible for the management and operation of both said Defendants.

12.     At all times relevant herein, Plaintiffs are informed and believe and thereon allege Defendant McGavisk is an individual, resident of the State of Delaware.  In accordance with Tex. Civ. Prac. & Rem. Code §17.044, service may be effectuated by substituted service on the Texas Secretary of State, Statutory Documents Section – Citations Unit located at P. O. Box 12079, Austin, TX 78711-2079.  Defendant McGavisk may be served at his place of residence, 2420 Porter Road, Bear, DE, 19701.

13.     At all times relevant herein, Plaintiffs are informed and believe and thereon allege Defendant McGavisk maintained an ownership interest in KW Moorestown and/or RM Realty and was responsible for the management and operation of both said Defendants.

14.     Defendant Keller Williams is domestic for-profit corporation formed and operated under the laws of the State of Texas. Defendant Keller Williams may be served with process by

4

serving its registered agent Cogency Global Inc, at 1601 Elm Street, Suite 4360, Dallas TX, 75201.

15.    Wherever appearing in this Complaint, each reference to Defendants, or any of them, is intended to be and shall be a reference to all Defendants, and to each of them, named and unnamed, unless the reference is otherwise qualified.

16.    At all times relevant herein, Plaintiff is informed and believes and thereon alleges that each of the Defendants was, at all times herein mentioned, acting in concert with each and every one of the remaining Defendants.

17.    At all times material hereto, all acts hereinafter stated were committed by the Defendants, their servants, agents or employees, acting within the scope of their employment.

18.    Whenever this Complaint alleges that Defendants did any act or thing, it is meant that their subsidiaries, affiliates, directors, officers, agents or employees performed or participated in such act or thing or failed to perform or participate in such act or thing, and in each instance where the subsidiaries, affiliates, directors, officers, agents or employees of Defendants performed or participated in such act or thing or failed to perform or participate in such act or thing, they were authorized to and, in fact, did on behalf of Defendants.

19.    Plaintiffs are informed and believe and thereon allege that at all times herein mentioned there existed a unity of interest and ownership between Defendant Denney and/or Defendant McGavisk, in the first part, and Defendant KW Moorestown and/or Defendant RM Realty, in the second part, so that any individuality and separateness between Defendant Denney and/or Defendant McGavisk, in the first part, and Defendant RM Realty and/or Defendant KW Moorestown, in the second part, has ceased and Defendant RM Realty and/or Defendant KW

5

Moorestown is/are the alter ego(s) of Defendant Denney and/or Defendant McGavisk as follows:

   a. Plaintiffs are informed and believe and thereon allege that Defendant RM Realty and/or Defendant KW Moorestown is/are and, at all times mentioned herein, was/were a mere shell and sham without capital, assets, stock or stockholders.  Said corporate Defendant(s) was conceived, intended and used by Defendant Denney and/or Defendant McGavisk as a device to avoid liability and for the sole purpose of substituting a financially insolvent corporation in place of Defendant Denney and/or Defendant McGavisk;

   b. Plaintiffs are informed and believe and thereon allege that Defendant RM Realty and/or Defendant KW Moorestown is/are and, at all times herein mentioned, was/were a mere shell, instrumentality and conduit through which Defendant Denney and/or Defendant McGavisk carried on their business in the corporate name exactly as they conducted it previous to incorporation, exercising complete control and dominance of such business to such an extent that any individuality or separateness of corporate Defendant RM Realty and/or Defendant KW Moorestown do/does not and, at all times herein mentioned, did not exist;

   c. Plaintiffs are informed and believe and thereon allege that Defendant RM Realty and/or Defendant KW Moorestown is/are and, at all times mentioned, was/were so inadequately capitalized that, compared with the business done by said Defendants, and the risks attendant thereon, its/their capitalization was illusory and trifling;

   d. Plaintiffs are informed and believe and thereon allege that Defendant RM Realty and/or Defendant KW Moorestown is/are and, at all times mentioned, was/were controlled, dominated, and operated by Defendant Denney and/or Defendant McGavisk as their individual business and alter ego, in that the activities and business of corporate Defendant RM

6

Realty and/or Defendant KW Moorestown were carried out without the holding of directors or shareholders meetings and without maintaining the records or minutes of corporate proceedings, and Defendant Denney and/or Defendant McGavisk entered into personal transactions with corporate Defendant RM Realty and/or Defendant KW Moorestown without the approval of other directors or shareholders; and

   e. Plaintiffs are informed and believe and thereon allege that Defendant RM Realty and/or Defendant KW Moorestown is/are a New Jersey Foreign Limited Liability Company(ies) whose charter was revoked on or about May 3, 2015 and/or May 31, 2018, for not filing an annual report for two (2) consecutive years and that, by operation of the statute in such cases provided and applicable case law, is/are the alter ego(s) of its controlling officers, directors and shareholders Defendant Denney and/or Defendant McGavisk.

  20. As a result of the acts and omissions complained of hereinabove, said Defendant Denney and/or Defendant McGavisk, are liable for all relief sought herein against corporate Defendant, RM Realty and/or Defendant KW Moorestown.

## B. JURISDICTION AND VENUE

  21. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332. There is complete diversity between the parties and the amount in controversy is in excess of $75,000.00, excluding interest and cost.

  22. Pursuant to 28 U.S.C. §1391(a)(2), venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to the claims contained in this Complaint occurred in the District. More specifically, the incident which caused the death of Robert Montalbano occurred in the Austin Division of the Western District of Texas.

### C.    **FACTS GIVING RISE TO THE COMPLAINT**

23.     At all times relevant herein, Decedent Robert Montalbano was a real estate agent operating out of Defendant KW Moorestown and/or Defendant RM Realty and part of its/their Agent Leadership Council (ALC) due to him being considered a high performing realtor.

24.     From August 15, 2023 through August 16, 2023, Defendant Keller Williams held a Mega Agent Camp, billed as a leading annual real estate training conference at the Austin Convention Center in Austin, Texas.  The Mega Camp was preceded by a CEO Summit held by Defendant, Keller Williams on August 14, 2023.

25.     Due to his position on the ACL of Defendant KW Moorestown and/or Defendant RM Realty, Decedent Robert Montalbano was required to attend one Defendant Keller Williams event a year and, therefore, registered to attend the CEO Summit and Mega Agent Camp in Austin, Texas.  Additionally, Defendants KW Moorestown, RM Reality, Denney, McGavisk and/or Keller Williams strongly encouraged its real estate agents to attend these events.

26.     Defendant Ryan, the Broker and Team Leader of Defendant KW Moorestown and/or Defendant RM Realty, and other real estate agents operating out of said Defendant's(s') office including, but not limited to, Defendant Hawken, also registered for Defendant Keller Williams' CEO Summit and Mega Agent Camp.

27.     On August 13, 2023, the day before the CEO Summit, Defendant Ryan organized an event which took place on Lake Travis in Austin, Texas.  The event was attended by fourteen (14) people including, but not limited to, Decedent Robert Montalbano, Defendant Ryan, Defendant Hawken and Defendant Hawken's fourteen (14) year old son, D.H., a minor, and resident of Burlington County, New Jersey, as well as other real estate agents from Defendant

8

KW Moorestown and/or Defendant RM Realty and at least one real estate agent from another real estate agency.

28.     At all times relevant herein, Plaintiffs are informed and believe and thereon allege that Defendant Ryan organized the event on Lake Travis described herein at the direction and under the control of Defendants KW Moorestown, RM Reality, Denney, McGavisk and/or Keller Williams.

29.     For the event, Defendant Ryan who, according to him, is an avid and skilled boater, rented a jet ski and tritoon boat from Defendant Lakeway Marina to be used on Lake Travis from noon until 4:00 p.m.  The maximum capacity for the tritoon boat was twelve (12) persons.

30.     Upon the group's arrival at Defendant Lakeway Marina, Defendants Ryan and Hawken provided Defendant Lakeway Marina with their licenses and Defendant Ryan signed paperwork provided by Defendant Lakeway Marina to rent the jet ski and tritoon boat.

31.     Thereafter, Defendant Ryan and eleven (11) of the event's attendees prepared to board the tritoon boat, while Defendant Hawken and her son D.H., a minor, prepared to board to jet ski from a nearby pier.

32.     At all times relevant herein, Plaintiffs are informed and believe and thereon allege that, prior to releasing the jet ski to Defendants Ryan and Hawken, Defendant Lakeway Marina failed to advise them, or the other attendees of the event, of any of the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code including, but not limited to, §31.109 prohibiting anyone born on or after September 1, 1993 from operating the jet ski alone unless he or she completed a boater education course approved by the Texas Department of Parks and Wildlife, §31.106(a)(4) prohibiting anyone from operating a personal watercraft (PWC) within

9

fifty (50) feet of any other vessel except at headway speed and §31.106(a)(8) prohibiting the jumping of wakes recklessly and unnecessarily close to another vessel.

33.    At all times relevant herein, Plaintiffs are informed and believe and thereon allege that, prior to releasing the jet ski to Defendants Ryan and Hawken, Defendant Lakeway Marina failed to provide Defendant Hawken or any of the attendees of the event with the boater education course required under §31.109 of the Texas Parks and Wildlife Code, failed to instruct the attendees of the event of any of the operational characteristics of the jet ski and failed to inquire which of the remaining attendees of the event would be operating the jet ski.

34.    At all times relevant herein, Plaintiffs are informed and believe and thereon allege that, prior to releasing the tritoon boat to Defendant Ryan, Defendant Lakeway Marina failed to advise Defendant Ryan and other attendees of the event of the maximum capacity requirements of the tritoon boat or that occupants of the tritoon boat were prohibited from sitting at the rear of the tritoon boat near the engine during operation.

35.    Defendant Ryan, as captain of the tritoon boat, left the dock onto Lake Travis carrying eleven (11) passengers including Decedent Robert Montalbano.

36.    Without instruction from Defendant Lakeway Marina of the operational characteristics of the jet ski and with no boater education course or knowledge of the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code, Defendant Hawken embarked onto Lake Travis with the jet ski with her son, D.H., a minor, on the rear of the jet ski.

37.    After about one-half (1/2) hour on Lake Travis, Defendant Ryan anchored the tritoon boat. Approximately fifteen (15) minutes later Defendant Hawken arrived at the location of the tritoon boat operating the jet ski with her son on the back of it. Thereafter, most of the members of the group took turns operating the jet ski around Lake Travis including D.H., a

minor, who was operating the jet ski alone and in clear violation of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code, §31.109.

38.    After approximately two and one-half (2 ½) to three (3) hours on Lake Travis, the attendees of the event proceeded back to the Defendant Lakeway Marina to return the rentals. Defendant Ryan captained the tritoon boat which now contained thirteen (13) persons, one over the maximum permitted by safety regulations. Defendant Hawken was now on the tritoon boat and Decedent Robert Montalbano was seated in the rear of the tritoon boat next to the engine.

39. Defendants Ryan and Hawken, impermissibly and in violation of several sections of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code, allowed D.H., a minor, to operate the jet ski alone to, as Defendant Hawken described, "have fun," jumping wakes.

40.    On his way back to the dock, D.H., a minor, was operating the jet ski alone behind the tritoon boat, moving left and right within fifty (50) feet of the tritoon boat and jumping the wakes created by Defendant Ryan's operation of the tritoon boat.  Neither Defendant Ryan nor Defendant Hawken directed D.H., a minor, to stop jumping wakes or to operate the jet ski a safe distance from the tritoon boat.

41.    As Defendant Ryan approached the location where he intended to dock the tritoon boat, he decelerated it significantly as a result, in part, to having too many persons on it in violation of Texas boating regulations and began speaking with someone near him.

42. When Defendant Ryan significantly slowed the tritoon boat, D.H., a minor, failed to slow the jet ski, went airborne from jumping the wakes behind the tritoon boat and caused the jet ski to crash violently into the rear of the tritoon boat with the jet ski flying in the air, striking Decedent Robert Montalbano, in the head and, ultimately, landing inside the tritoon boat.

11

43.     After emergency lifesaving procedures were performed on him for several minutes, Decedent Robert Montalbano was pronounced deceased.

44.     During an interview with a member of the Travis County Sheriff's Department, Defendant Ryan acknowledged that, while captaining the tritoon boat on the water, he consumed at least two (2) Happy Dad hard seltzers which are alcoholic beverages.

45.     In addition, photographs of the tritoon boat taken after the incident disclosed numerous empty alcoholic beverage containers scattered throughout the triton boat and in a trash can on the triton boat. There was also a "Modelo" beer can in a cupholder on the console directly in front of the tritoon boat's steering wheel where Defendant Ryan was sitting when he was operating the triton boat.

46.     As a result of his negligent and reckless operation of the jet ski, D.H., a minor was issued two summonses, one for violating §31.106(8) of the Texas Parks and Wildlife Code, by jumping the wake of the tritoon recklessly or unnecessarily close to the tritoon, and the other for violating §31.109 of the Texas Parks and Wildlife Code, operating the jet ski without completing a boater education course.

47.     On August 6, 2024, D.H., a minor, pled no contest to and was found guilty of violating §31.106(8) and §31.109 of the Texas Parks and Wildlife Code.

## D. CAUSES OF ACTION

### COUNT I

### Negligence – Sara Hawken

48.     Plaintiffs incorporate each and every allegation of this Complaint as through fully set forth at length herein.

49.    At all times relevant herein, Defendant Hawken had a duty to act as a reasonable person would under the circumstances.

50.    Defendant Hawken breached such duty and was negligent in various acts and omissions, which negligence was the proximate cause of the incident described herein resulting in Decedent Robert Montalbano's fatal injuries in that she permitted her fourteen (14) year old son, D.H., a minor, to operate the jet ski generally and in violation of the laws of the State of Texas as follows:

    a.  Defendant Hawken allowed D.H., a minor, to operate a jet ski without taking a boater education course as required under §31.109 of the Texas Parks and Wildlife Code;

    b.  Defendant Hawken allowed D.H., a minor, to jump the wakes of the tritoon boat recklessly in violation of §31.106(a)(8) of the Texas Parks and Wildlife Code;

    c.  Defendant Hawken allowed D.H., a minor, to operate the jet ski within fifty (50) feet of the tritoon boat at times other than at headway speed in violation of §31.106(a)(4) of the Texas Parks and Wildlife Code; and

    d.  Defendant Hawken allowed D.H., a minor, to operate the jet ski without being instructed by Defendant Lakeway Marina about how to operate a jet ski or about any of the boater laws and safety guidelines concerning the operation of a personal watercraft on the water including not being advised of the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code concerning the proper operation of jet skis.

51.    The injuries sustained by Decedent Robert Montalbano ultimately resulting in his death were foreseeable to Defendant Hawken in that she permitted her fourteen (14) year old son to operate a jet ski which is an inherently dangerous instrumentality.

52.     The foregoing acts of negligence were a proximate cause of Decedent Robert Montalbano's injuries and subsequent death, pre-death conscious pain and suffering and Plaintiffs' damages.

## COUNT II

### Gross Negligence – Sara Hawken

53.     Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

54.     Defendant Hawken's conduct in permitting her fourteen (14) year old son to operate a jet ski in the manner set forth herein and without instruction about its operational characteristics or the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code concerning proper operation of a jet ski when viewed objectively from her standpoint at the time she allowed him to operate said jet ski involved an extreme degree of risk considering the probability and magnitude of the potential harm to others including Decedent Robert Montalbano.

55.     Upon information and belief, Defendant Hawken had actual, subjective awareness of the risk involved in allowing her fourteen (14) year old son to operate the jet ski in the manner set forth herein without instruction about its operational characteristics or the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code concerning proper operation of a jet ski but, nevertheless, proceeded with conscious indifference to the rights, safety and welfare of others including the Decedent Robert Montalbano.

56.    Defendant Hawken's conduct aforesaid was a proximate cause of Decedent Robert Montalbano's injuries and subsequent death, pre-death conscious pain and suffering and Plaintiff's damages.

## COUNT III

### Negligence – Joseph Ryan

57.    Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth herein.

58.    At all times relevant herein, Defendant Ryan, as captain of the tritoon boat and renter of the tritoon boat and jet ski had a duty to act as a reasonable person would under the circumstances.

59.    Defendant Ryan breached such duty and was negligent in various acts and omissions, which negligence was a proximate cause of the incident described herein resulting in Decedent Robert Montalbano's fatal injuries in that, despite describing himself as an avid and skilled boater:

a.  He permitted fourteen (14) year old D.H., a minor, to operate a jet ski, an inherently dangerous instrumentality, he rented from a vessel livery alone and in violation of the laws of the State of Texas including, but not limited to, §31.106(a)(4), §31.106(a)(8) and §31.109 of the Texas Parks and Wildlife Code;

b.  he failed to stop D.H., a minor, from jumping wakes upon learning he was doing so;

c.  he failed to demand that D.H., a minor, operate the jet ski a safe distance from the tritoon boat;

d. he permitted a fourteen (14) year old D.H., a minor, to operate a jet ski without first ensuring he was provided instruction about its operational characteristics and passed the boater education course required under Texas law;

e. he operated the tritoon boat while it contained more passengers than its maximum capacity per boating regulations;

f. he operated the tritoon boat after and/or while consuming several alcoholic beverages; and

g. he allowed Robert Montalbano to sit at the rear of the tritoon boat next to its engine while being operated.

60.    The injuries sustained by Decedent Robert Montalbano ultimately resulting in his death were foreseeable to Defendant Ryan.

61.    The foregoing act of negligence were a proximate cause of Decedent Robert Montalbano's injuries and subsequent death, pre-death conscious pain and suffering and Plaintiffs' damages.

<u>**COUNT IV**</u>

<u>**Gross Negligence – Joseph Ryan**</u>

62.    Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

63.    Defendant Ryan's conduct in permitting a fourteen (14) year old to operate a jet ski in the manner set forth herein and without instruction of the operational characteristics of jet ski, without passing the requisite boater education course and without knowledge of the

provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code concerning the proper operation of jet skis or ensuring D.H., a minor, was provided with such instruction, had such knowledge and passed such course when viewed objectively from his standpoint at the time he allowed him to operate said jet ski involved an extreme degree of risk considering the probability and magnitude of the potential harm to others including Decedent Robert Montalbano.

64.    Upon information and belief, Defendant Ryan had actual, subjective awareness of the risk involved in allowing a fourteen (14) year old to operate the jet ski in the manner set forth herein and without instruction of the operational characteristics of jet ski, without passing the requisite boater education course and without knowledge of the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code concerning the proper operation of jet skis but, nevertheless, proceeded with conscious indifference to the rights, safety and welfare of others including the Decedent Robert Montalbano.

65.    Further, Defendant Ryan's conduct of operating the tritoon boat above maximum capacity and after and/or while consuming several alcoholic beverages, as well as allowing Decedent Robert Montalbano to sit at the rear of the tritoon boat while being operated, when viewed objectively from his standpoint at the time he operated said tritoon boat above maximum capacity and after and/or while consuming several alcoholic beverages, as well as allowing Decedent Robert Montalbano to sit at the rear of the tritoon boat while being operated, involved an extreme degree of risk considering the probability and magnitude of the potential harm to others including Decedent Robert Montalbano.

66.    Upon information and belief, Defendant Ryan had actual, subjective awareness of the risk involved in operating the tritoon boat above maximum capacity and after and/or while

17

consuming alcoholic beverages, as well as in allowing Decedent Robert Montalbano to sit at the rear of the tritoon boat while being operated, but, nevertheless, proceeded with conscious indifference to the rights, safety and welfare of others including the Decedent Robert Montalbano.

67.     Defendant Ryan's conduct aforesaid was a proximate cause of Decedent Robert Montalbano's injuries and subsequent death, pre-death conscious pain and suffering and Plaintiff's damages.

**COUNT V**

**Negligence and Negligence Per Se– Lakeway Marina**

68.     Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth herein.

69.     At all times relevant herein, Defendant Lakeway Marina as a vessel livery had a duty to act as a reasonable vessel livery would under the circumstances.

70.     Defendant Lakeway Marina breached such duty and was negligent in various acts and omissions, which negligence was a proximate cause of the incident described herein resulting in Decedent Robert Montalbano's fatal injuries which includes, but is not limited to, the following:

a.  renting and releasing the jet ski to Defendants Hawken and Ryan without advising them that anyone who was born after September 1, 1993 is prohibited from operating the jet ski alone unless and until he or she completed a boater education course approved by the Texas Department of Parks and Wildlife in violation of §31.111(b)(1) of the Texas Parks and Wildlife Code;

b.  failing to provide the requisite boater education course for the operation of the jet ski to the fourteen (14) attendees of the event in violation of §31.111(b) of the Texas Parks and Wildlife Code;

c.  failing to inquire from Defendant Hawken and/or Defendant Ryan and/or otherwise determine which of the fourteen (14) attendees of the event would be operating the jet ski and then provide those attendees with instruction relating to the operation characteristics of the jet ski in violation of §31.111(b)(2) of the Texas Parks and Wildlife Code;

d.  failing to provide the fourteen (14) attendees of the event with the boating regulations of Lake Travis in violation of §31.111(b)(3) of the Texas Parks and Wildlife Code;

e.  failing to require that those of the attendees of the event who operated the jet ski sign an acknowledgement form indicating the operator has received instruction about the operational characteristics of the jet ski in violation of §31.111(c) of the Texas Parks and Wildlife Code;

f.  renting and releasing the jet ski without providing each of the fourteen (14) attendants of the event with instructions regarding the provisions of Chapter 31, "Water Safety," of the Texas Parks and Wildlife Code including, but not limited to, §31.106(a)(4), §31.106(a)(8) and §31.109;

g.  failing to supervise the operation of the jet ski while on the water to ensure none of the participants of the event were operating the jet ski in violation of Texas law;

h.  failing to advise Defendant Ryan of the maximum capacity of the tritoon boat; and

19

i.  failing to advise Defendant Ryan or any of the attendees of the event that, while the tritoon boat is being operated, no one is to sit at the rear next to the engine.

71.    The injuries sustained by Decedent Robert Montalbano ultimately resulting in his death were foreseeable to Defendant Lakeway Marina for the foregoing reasons.

72.    The foregoing acts of negligence was a proximate cause of Decedent Robert Montalbano's injuries and subsequent death, pre-death conscious pain and suffering and Plaintiffs' damages.

## COUNT VI

### Gross Negligence – Lakeway Marina

73.    Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

74.    Defendant Lakeway Marina's conduct regarding its rental of the jet ski and tritoon boat as set forth herein when viewed objectively from the standpoint of said Defendant at the time said Defendant rented the jet ski and tritoon boat involved and extreme degree of risk considering the probability and magnitude of the potential harm to other including Decedent Robert Montalbano.

75.    Upon information and belief, Defendant Lakeway Marina had actual, subjective awareness of the risk involved in its conduct regarding its rental of the jet ski and tritoon boat as set forth herein but, nevertheless, proceeded with a conscious indifference to the rights, safety and welfare of others including Decedent Robert Montalbano.

76.     Defendant Lakeway Marina's conduct aforesaid was a proximately cause of Decedent Robert Montalbano's injuries and subsequent death, pre-death conscious pain and suffering and Plaintiff's damages.

## COUNT VII

## Respondeat Superior – RM Realty

77.     Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

78.     Under the doctrine of respondeat superior, Defendant RM Realty is vicariously liable for damages proximately caused to Plaintiffs by the conduct of its servant, agent and/or employee Defendant Ryan while he was acting within the course and scope of his employment and while under his employer's control.

79.     At all times herein, Defendant Joseph Ryan was acting within the course and scope of his employment and under the control of Defendant RM Realty in holding the event described herein which included the rental of the jet ski and tritoon.

80.     Defendant RM Realty is vicariously liable for the damages proximately caused to Decedent Robert Montalbano and Plaintiffs by the conduct of its servant, agent and/or employee Defendant Joseph Ryan.

## COUNT VIII

## Respondeat Superior – KW Moorestown

81.     Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

82.     Under the doctrine of respondeat superior, Defendant KW Moorestown is vicariously liable for damages proximately caused to Plaintiffs by the conduct of its servant, agent and/or employee Defendant Ryan while he was acting within the course and scope of his employment and while under his employer's control.

83.     At all times herein, Defendant Joseph Ryan was acting within the course and scope of his employment and under the control of Defendant KW Moorestown in holding the event described herein which included the rental of the jet ski and tritoon.

84.     Defendant KW Moorestown is vicariously liable for the damages proximately caused to Decedent Robert Montalbano and Plaintiffs by the conduct of its servant, agent and/or employee Defendant Joseph Ryan.

## COUNT IX

### Respondeat Superior – Michael L. McGavisk

85.     Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

86.     Under the doctrine of respondeat superior, Defendant McGavisk is vicariously liable for damages proximately caused to Plaintiffs by the conduct of his servant, agent and/or employee Defendant Ryan while he was acting within the course and scope of his employment and while under his employer's control.

87.     At all times herein, Defendant Joseph Ryan was acting within the course and scope of his employment and under the control of Defendant McGavisk holding the event described herein which included the rental of the jet ski and tritoon.

88.    Defendant McGavisk is vicariously liable for the damages proximately caused to Decedent Robert Montalbano and Plaintiffs by the conduct of his servant, agent and/or employee Defendant Joseph Ryan.

## COUNT X

### Respondeat Superior – George Denney

89.    Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

90.    Under the doctrine of respondeat superior, Defendant Denney is vicariously liable for damages proximately caused to Plaintiffs by the conduct of his servant, agent and/or employee Defendant Ryan while he was acting within the course and scope of his employment and while under his employer's control.

91.    At all times herein, Defendant Joseph Ryan was acting within the course and scope of his employment and under the control of Defendant Denney holding the event described herein which included the rental of the jet ski and tritoon.

92.    Defendant Denney is vicariously liable for the damages proximately caused to Decedent Robert Montalbano and Plaintiffs by the conduct of his servant, agent and/or employee Defendant Joseph Ryan.

## COUNT XI

### Respondeat Superior – Keller Williams Realty, Inc.

93.    Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

23

94.    Under the doctrine of respondeat superior, Defendant Keller Williams is vicariously liable for damages proximately caused to Plaintiffs by the conduct of its servant, agent and/or employee Defendant Ryan while he was acting within the course and scope of his employment and while under his employer's control.

95.    At all times herein, Defendant Joseph Ryan was acting within the course and scope of his employment and under the control of Defendant Keller Williams in holding the event described herein which included the rental of the jet ski and tritoon.

96.    Defendant Keller Williams is vicariously liable for the damages proximately caused to Decedent Robert Montalbano and Plaintiffs by the conduct of its servant, agent and/or employee Defendant Joseph Ryan.

## COUNT XI – Survival and Wrongful Death

97.    Plaintiffs incorporate each and every allegation of this Complaint as though fully set forth at length herein.

98.    Plaintiffs seek recovery under the Texas Wrongful Death Statute, Tex. Civ. Prac. & Rem. Code §17.001 et seq., and for damages sustained pursuant to the Texas Survival Statute, Tex. Civ. Prac. & Rem. Code §17.021.

99.    Plaintiffs would show that Decedent Robert Montalbano experienced conscious pain and suffering after his injury and prior to his death, Decedent Robert Montalbano's damages survive to his estate and Decedent Robert Montalbano's injuries, death and damages were proximately caused by Defendants' negligence, negligence per se and gross negligence.

24

100.    Plaintiffs have further suffered additional loss by virtue of the destruction of the parent-child relationship including the right to love, affection, solace, comfort, companionship, emotional support and happiness.

101.    Pursuant to Tex. Civ. Prac. & Rem. Code §17.002(b), §17.004(b), §71.009 and §71.010, Plaintiffs are entitled to recover from Defendants the actual damages attributable to the wrongful death of Decedent Robert Montalbano.  Plaintiffs are also entitled to recover mental anguish damages.

102.    Plaintiffs are entitled to recover exemplary damages for the wrongful death of Decedent Robert Montalbano because his death was caused by Defendants willful acts, omission and gross negligence.  Tex. Civ. Prac. & Rem. Code §71.009; Tex Const., Art XVI, §26 (1876).

## E.    DAMAGES

103.    As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered the following injuries and damages:

a.  Physical pain and mental anguish suffered by Decedent Robert Montalbano;

b.  medical expenses incurred to treat Decedent Robert Montalbano's injuries;

c.  funeral and burial expenses;

d.  loss of care, maintenance, support, services, advise, counsel and reasonable contributions of a pecuniary value suffered by Plaintiffs;

e.  loss of companionship and society; and

f.  mental anguish in the future.

## F.    **EXEMPLARY DAMAGES**

104.    Defendants' conduct complained of and made the basis of this Complaint was malicious, oppressive, wanton , callous, willful and heedlessly in disregard of Plaintiffs' right and, accordingly, Plaintiffs are entitled to recover exemplary damages as a means of making a public example of Defendants, thereby signaling to Defendants, and other possible wrongdoers in this community and the business community of Texas at large, that such conduct will not be tolerated.

105.    The facts alleged in the cause of action support Plaintiffs' claim.  Plaintiffs allege that exemplary damages in an amount within the jurisdictional limits of the Court would serve as an appropriate measure implementing this warning.

## G.    **PRAYER**

106.    For these reasons, Plaintiffs ask for judgment against Defendants for the following:

a.  Actual damages within the jurisdictional limits of this Court;

b.  pre-judgment and post-judgment interest as allowed by law;

c.  exemplary damages;

d.  cost of suit; and

e.  all other relief in law and in equity to which Plaintiffs may be entitled.

Respectfully submitted,

**LAW OFFICES OF STEVE GIBBINS**

STEVE GIBBINS, Esq.
State Bar No.
1411 West Avenue, Suite #200
Austin, TX 78701
Phone: (512) 759-8626
Fax: (512) 482-8303
Email: sgibbins@1411west.com

*Attorney for Plaintiffs*

And

DeNITTIS OSEFCHEN PRINCE, P.C.

Stephen P. DeNittis, Esq.*
Joseph A. D'Aversa, Esq.*
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: jdaversa@denittislaw.com

* Pro Hac Vice Application To Be Submitted

*Attorneys for Plaintiffs*

27